Final case on our call this morning is agenda number 10, case number 107363, people of the State of Illinois Appelant v. Salvatore Ortiz Appelant. Ms. Kelly, you may proceed. Chief Justice, honored members of the court, I'm Assistant State's Attorney Tasha Marie Kelly from the Cook County State's Attorney's Office. I'd like to begin by reviewing a brief procedural history of this case with the court since it's so significant to this court's consideration of the issue presented here. The events leading to this case began on June 28th of 1992 when this petitioner and some fellow gang members went to a public park on the north side of Chicago and attacked a young man named Francisco Ramos simply because they believed him to be a member of a rival gang. During the course of the beating, petitioner pulled a gun and shot Ramos, an act that was witnessed by two different individuals, both of whom testified at defendant's trial. Petitioner was found guilty of first-degree murder after a bench trial in 1994 where he presented an alibi witness who testified that petitioner was with him on the other side of the park during the shooting. Petitioner appealed this conviction claiming, among other things, that the people failed to prove his guilt beyond a reasonable doubt. His conviction was affirmed on appeal based on issues of credibility. Three years later, in 1997, petitioner presented his first post-conviction. In it, he claimed that he received ineffective assistance from his counsel, along with actual innocence based on newly discovered evidence. Specifically, petitioner presented three more alibi witnesses who stated they were in the park during the shooting and saw petitioner and that he was not involved. This petition was dismissed by the trial court and that was affirmed on appeal. Three years later, in 2000, petitioner filed his second post-conviction, again claiming ineffective assistance and actual innocence. This time, petitioner included affidavits from two witnesses, a woman who stated she was also in the park during the shooting, who did not identify petitioner in a line-up, and a witness named Victor Ocasio, who stated he was in the park as well, and named two individuals, including petitioner. Oscar Chacon and his cousin, Efren Chacon, as the shooters. This petition was also dismissed and that dismissal was upheld on appeal. Four years later, 12 years after the shooting and 10 years after the original trial, petitioner filed his third post-conviction and his third claim of actual innocence. In this claim, petitioner presented affidavits from two witnesses, Danny Huertas and Sigfrido Hernandez, both of whom also identified the Chacons as the shooters. Both averred that they did not see petitioner in the park. Petitioner was granted a third-stage evidentiary hearing, and at that hearing presented testimony only from Hernandez. After the hearing, the court denied petitioner post-conviction relief and he brought an appeal. On appeal, the first district, first division of the appellate court reversed, with the majority finding that Hernandez's testimony constituted newly discovered evidence. The majority also rejected the people's argument that Hernandez's testimony constituted newly discovered evidence. The majority also rejected the people's argument that petitioner was required to meet the threshold cause and prejudice test prior to filing his successive post-conviction petition. The type of piecemeal litigation that is represented by this procedural history is the result of a misinterpretation of both the Post-Conviction Hearing Act and this court's holding in People v. Pitzenbarger. This misinterpretation ignores the well-established cause and prejudice requirements and allows a petitioner with a claim of actual innocence of four years. The petitioner has a free pass to file a successive post-conviction petition and proceed straight to first-stage consideration. The result of this misinterpretation is a situation like the one before this court, where every few years this petitioner manages to locate and bring forth new witnesses to support a claim of actual innocence. The holding of the appellate court majority here will allow this to continue seemingly without any end, with petitioner having bite after bite of the same appellate apple. The claim of actual innocence could not satisfy the cause and prejudice test? Is that your position? No. Our position is that a valid claim of actual innocence should meet the cause and prejudice test. However, the way that it's being applied now, where a petitioner brings a successive claim of actual innocence, he's not being required to meet the threshold cause and prejudice test, which every other successive petitioner in the state of Illinois is required to meet. However, though, in bringing this kind of petition, doesn't the requirement that defendants show evidence was newly discovered, it was material, non-accumulative, and conclusive in order to take advantage of this? I mean, it'd still have to bring a lot of information before the court to make this determination. Well, the way that the rule was interpreted by the appellate court majority and the way that it's being interpreted in many of the cases that are discussed in the briefs that were filed, as long as a petitioner brings a claim of actual innocence, it's sufficient for him to get this free pass where he's not required to meet any sort of threshold test. But he's also having to bring all kinds of information before the court to make a determination. I don't think it's a free pass, do you? Well, he's not... Do you still have to bring a lot of information before the court that it's newly discovered, evidence, it's material, it's substantive? Those are the things that he needs to show in order to succeed on his claim of actual innocence, but he's not required to do anything more than present his claim along, like in the form of an affidavit, with his post-conviction petition in order for his petition to be advanced. The courts and the appellate court majority's interpretation isn't looking at the quality of the evidence and determining whether it should proceed to first stage consideration. They're simply looking at the fact that it includes a freestanding claim of actual innocence. Aren't we in this judicial system trying to decide whether there's fundamental justice? Certainly. I mean, so isn't that like setting up some kind of a barrier? I mean, when there's an actual innocence claim, shouldn't you get to the actual innocence claim and see whether it goes up or down on the, on what the defendant presents? Well, certainly the, our position is not to try to block these claims of actual innocence from proceeding. Our position is based on the fact that they're based on the plain language of the Post-Conviction Hearing Act, which states that the defendant's claim of actual innocence, which was amended in 2004, there's no provision for these successive claims of actual innocence to be heard without meeting the cause and prejudice test. You mentioned Pitzenbarger as well as the Post-Conviction Hearing Act. How does Pitzenbarger support your position? Doesn't Pitzenbarger stand for the proposition that actual innocence is a way of getting around the cause and prejudice test? Well, Pitzenbarger states that the cause and prejudice may be excused where there's a failure to raise a claim and to where, to prevent a fundamental miscarriage of justice. However, our position is that once an original... It goes on to say, to demonstrate such a miscarriage of justice, a petitioner must show actual innocence. Correct. And our position is that in reading the language of Pitzenbarger, that Pitzenbarger doesn't provide for an actual innocence. He doesn't provide for successive post-convictions to be raised without meeting the cause and prejudice test, because at that point there would be no failure to raise a claim, as discussed in the language. The petitioner will have already raised his claim of actual innocence, which was allowed and heard. And in getting back to the question that was asked, there are other vehicles for these petitioners to pursue these claims of actual innocence. Before we go there, Justice McBride, in a concurring decision, said that the defendant reached the cause and prejudice test. Do you think so? No, I do not. In this case, the defendant failed to show adequate cause for his failure to bring the claim earlier, and he also failed to show that he was prejudiced by the fact that this... that he would be prejudiced by not bringing this forth, frankly because the evidence, the testimony of Sigfrido Hernandez was not of the quality that it would have changed the outcome of the original proceedings. But in returning to the question of whether these claims of actual innocence will be blocked, they won't. There are other, more appropriate avenues for these petitioners to take. There's 214-01 petitions. They can apply for federal habeas relief. And there's the remedy, which in Herrera v. United States, the United States Supreme Court said is traditionally the appropriate remedy, and that's executive clemency. And certainly with a claim of, with a petition for executive clemency, a petitioner can apply as many times as he wants. He can supplement that with successive requests for executive clemency. If newly discovered evidence were to come forward, he could certainly apply again for executive clemency. So there certainly are other avenues, more appropriate avenues, that are not, that would be consistent with the intent of the Post-Conviction Hearing Act and the language of the Post-Conviction Hearing Act. It's also, it's interesting to note for this court that in the amicus brief that was filed in this case, it lists a number of individuals at the, towards the end of the brief. And four out of the five individuals who are listed in the amicus brief received, had their convictions overturned or received relief, and all of them received it in forms that were not successive post-convictions. So it's clear that these other avenues for relief and vindication are not consistent with the intent of the Post-Conviction Hearing Act. It's clear that these other avenues for relief and vindication are available, and that they are successful, as evidenced by the information that's contained in the brief that was filed by Northwestern in this case. I would just also note for this court that, as I said, the Post-Conviction Hearing Act was amended in 2004, which is after this court's decision in People v. Pitzenbarger, and that in amending the Post-Conviction Hearing Act in subsection F, the legislature could not amend the Post-Conviction Hearing Act in subsection B. The legislature chose not to carve out an exception for actual innocence. Certainly, we have to presume that the legislature was aware of the language in Pitzenbarger for the so-called actual innocence exception, and they chose to address. First is, isn't it just as likely that the statutory amendment that, you're quite correct, was enacted two years after Pitzenbarger, was probably meant to codify the holding of that case, and not to do away with the separate exception for freestanding claims of actual innocence? That's part number one of the question. Part number two is, at any rate, the cases that hold that actual innocence does not require the cause and prejudice test do so as a requirement of constitutional due process. So even if we agree with your proposition as to the Post-Conviction Hearing Act not mentioning that, a simple statutory amendment would not be enough to overcome those cases that indicate its deprivation of due process rights. So looking at it in those two ways, how would you address those two arguments? Well, if I could address the second question first. Certainly in Washington, this court stated that a petitioner has the right to bring forward an actual innocence as a matter of due process, but nothing in Washington indicated that it was meant to allow a petitioner to bring forth unlimited claims of actual innocence without any sort of adherence to the requirements that are set forth for every other petitioner bringing forth a successive post-conviction claim. If you look at, for instance, a petitioner who has a valid claim that he was tried before a biased judge, for whatever reason that petitioner fails to bring that forth in his first post-conviction petition, he would be, that's an error that this court has deemed a structural error, that he's entitled to a new trial, but even that defendant would have to meet the cause and prejudice requirement before he's allowed to bring a successive post-conviction petition. Which came first, Washington or the Post-Conviction Act? The Post-Conviction Act. In response to your other question, I'm sorry? Didn't Pitsenbarger reaffirm the Washington case? That a claim of actual innocence may be brought. But again, even in Pitsenbarger, there's no language that suggests that it was meant to be an actual innocence petition. In Washington, this court said that procedurally, claims of actual innocence should be treated as any other claim and set forth no particular exceptions. And how about the proposition that the amendment merely meant to codify Pitsenbarger rather than to do away with the actual innocence analysis? Well, I would, what I would say is this. Certainly if you look at the amendments that were made to the Post-Conviction Hearing Act, such as subsection C, in subsection C, the legislature amended the Post-Conviction Hearing Act to exempt claims of actual innocence from the time limitations which are set forth on all other post-conviction petitions. So certainly that indicates that the legislature was very aware of the language and the discussions of actual innocence petitions in both Pitsenbarger and Washington, that the legislature was willing to be responsive to that jurisprudence and chose in their discussions and amendments to include an exemption to the time limit requirement, but chose not to do so for the cause and function of the case. And then there's the prejudice section. So certainly they were aware and willing to be responsive, but chose not to in terms of this section of the Post-Conviction Hearing Act. Were the first two post-conviction petitions summarily dismissed at stage one? The first post-conviction was, the second was dismissed after a motion to dismiss was filed by the people. And this, in the present petition, went to a hearing? It did. There was a motion to dismiss filed by the people. The post-conviction court indicated that it was leaning towards granting the people's motion to dismiss, but after further argument, the court advanced the case to a third stage evidentiary hearing as to the testimony of the witnesses Huertas and Hernandez. Only Hernandez testified. The court in this case did grant leave. And is there anything in the record to show cause and prejudice or not, or simply going ahead? The fact that the court did go ahead and then ultimately denied the petition, but the appellate court reversed. I guess I'm a little confused as to what relief you're looking for other than reversing the appellate court and not allowing a new trial. You're couching it in language of cause and prejudice, but it almost seems like we're past that point. Our request would be twofold. First, to find that the petition was not properly filed with the court because the petitioner failed to meet the threshold cause and prejudice test, which is required of every successive petition. And secondly, that the overall ruling by the appellate court reversing the finding of the trial court was incorrect. Was this argued below that the trial court should not have proceeded to a hearing? It was raised by the people in the appellate court, yes. In getting back to the question that was asked originally by Justice Burke in terms of whether this defendant met the cause and prejudice test, it leads into the people's second argument, which is that the trial court, or I'm sorry, the appellate court also met the cause and prejudice test and also committed manifest error in that it found that the ruling of the post-conviction court was incorrect and also in the fact that it failed to give due deference to the credibility findings which were made by the post-conviction court. In making its ruling, the post-conviction court found that the testimony of Hernandez, when weighed against the testimony that was presented by the people's witnesses in the trial court, although he used the language cumulative, it's clear that what the post-conviction court was relying on was the fact that the testimony of Hernandez was not credible enough to outweigh the testimony that was presented by the people's witnesses in the trial court. This ruling should have been given deference by the appellate court, and instead the appellate court substituted its own credibility determinations and reweighed the evidence itself. The testimony that was presented by the petitioner at the post-conviction third stage evidentiary hearing was of a witness who waited 12 years to come forward, a fellow gang member of the petitioners who could have been discovered earlier. Certainly there were a number of people who were in the park that night, all of whom were brought forward earlier by petitioner. This witness could have been found with the exercise of due diligence. The testimony that he brought forth was not of such a credible nature that it would have changed the outcome of the trial in this case. Was the question of finding these witnesses or having these witnesses finally admit to what, testify to what they saw and actually happen? It was set forth that Hernandez was only located recently, that he had only come forth recently. He left, did he leave the country, was that it? And he was released from a roofer somewhere between three to six months after the shooting took place. Following up on Justice Freeman's I think initial question, that isn't claim of actual innocence or proof of actual innocence, isn't that enough to satisfy the cause of prejudice? First of all, if there is proof of actual innocence, there's prejudice. Secondly, if the defendant had that proof, he certainly would have come forward with it at the time of trial. So he merely needs to establish why it wasn't available. Wouldn't that be a correct assumption? Well, certainly in a number of cases, a claim of, a valid claim of actual innocence would be sufficient to satisfy the cause and prejudice test. In this particular case, because of the quality of evidence and because Petitioner cannot meet the cause prong of the cause and prejudice test, the people's position would be that he did not satisfy the cause and prejudice test. I see that my time is up. I have one question. Justice Thomas, go ahead. Ms. Kelly, is it your position that the appellate court, I thought I saw some characterizations in your brief, that the appellate court's analysis in interpreting Pitsenberger established that any claim of actual innocence would suffice. And I'm just wondering if a fair reading of the appellate court's case is where defendant makes an actual showing of actual innocence, not just a claim of actual innocence. They went through a rather lengthy analysis, didn't they, of what evidence is being presented and what impact it would have on retrial and concluded that the outcome would likely change. So didn't they really say, and maybe you didn't make that characterization. I just want to make sure what we're dealing with here. Well, I believe that the appellate court's detailed analysis was because they were ultimately reversing the finding of the third stage evidentiary hearing, that the testimony that was presented was sufficient to demonstrate Petitioner's claim of actual innocence. And I don't necessarily think that the language that you're referring to in the opinion went to a consideration of whether there was a valid charge. I think it was a showing of actual innocence. And the way that it's being applied in the lower courts and the interpretation that I took from the majority's opinion is that any claim of actual innocence, as long as there is a freestanding claim of actual innocence included in a post conviction petition, that cause and prejudice does not have to be met. Thank you. May it please the court. My name is Mark Oates and I represent the appellee, Mr. Salvador Ortiz. This case essentially presents two questions. One, does a claim of actual innocent obviate the need to show cause and prejudice? Here, Ortiz meets both. Two, does the testimony of Mr. Hernandez constitute an evidence of actual innocence? Three, does the testimony of Mr. Hernandez constitute an evidence of preliminary showing of a newly discovered evidence within the meaning of that standard? First, let's look at whether the standard should be actual innocence or cause and prejudice. Since Washington, incarceration of the innocent... Before you get into that, Mr. Oates, is it a claim or is it a showing? A showing here, Your Honor. The claim is at the stage where the judge determines whether or not a preliminary showing has been made. Once he makes that determination, then the case proceeds to the evidentiary hearing. The showing then occurs at the evidentiary hearing through the witnesses and other testimony. So since Washington... Counsel? ...has identified cause and prejudice, does the rest of it become moot? I think it does. There are others, and there may be other cases, where it's important whether or not the Constitution transcends a mere statutory amendment. That case, frankly, is not before you here today. Mr. Ortiz meets both the actual innocence claim and cause and prejudice claim. The policy underlying Washington is that innocent people should not be in jail. Pitsenbarger reaffirmed Washington and came to the conclusion that a claim of actual innocence obviates the need for a showing of cause and prejudice. However, as Ms. Kelly mentioned in her follow-up argument, I can't imagine a situation where a showing of actual innocence, a showing, not a claim, not a free pass, but an actual showing of actual innocence. And let me digress one moment. The State has mentioned the Collier case. Justice Tumen, in the Collier case, went to great lengths to point out that actual innocence doesn't involve a heightening of doubt. It involves a claim of total exoneration, a vindication of innocence. That's what we're talking about here. That's the quality of the testimony of Mr. Hernandez in the evidentiary hearing. In Pitsenbarger, the Court said that if you can't meet cause and prejudice, you can still proceed only on actual innocence. I frankly have struggled to try to come up with an example where actual innocence was shown, and it didn't meet cause and prejudice. I have failed. And just as Justice McBride noted here, the claim of actual innocence, advanced by Mr. Ortiz through the testimony of Mr. Hernandez, meets the cause and prejudice standards. Let's first deal, though, with the actual innocence issues. Simply put, after Pitsenbarger and after the statute is amended, does the legislature intend to cut off claims of actual innocence? I think the comment from the bench, that this is constitutional and not statutory, is precisely the right analysis. The legislature, even if they intended to cut off claims of actual innocence, had no power to do so. But I don't think the legislature meant to do so. As also pointed out in the prior argument by the bench, it's just as likely they didn't. That's what the legislative history says. It was an intent to codify current practice. Interestingly, in the State's reply brief on page one, in the second paragraph on page one of their reply brief, the State now says, yes, actual innocence applies, but only for one claim of actual innocence. I struggle to understand how an incarcerated person can not develop the information that shows his actual innocence at the time of his first post-conviction petition, or his second, or his fifth. I cannot understand why the Constitution applies any less to that individual, because the basic policy, as stated in Washington and Pittsburgh, is that the State, in claiming that Pittsburgh and Washington only entitle you to one actual innocence claim, fails to give any basis for how they reach that result. While I mentioned, as I mentioned before, while the issue of whether actual innocence or cause and prejudice is the appropriate standard, and if one obviates the other, is a very important point, and I suppose could be critical in a future case, here it frankly doesn't matter. Mr. Ortiz meets cause and prejudice. Justice McBride hit the nail on the head in her concurrence. The cause is that Mr. Hernandez feared for his life. The facts show that as Efren Chacon and Oscar Chacon were on their bikes coming out from the side of the field house, they looked Mr. Hernandez in the eye, and he looked them in the eye, and they then turned left, proceeded up the street, and gunned down the victim. As Mr. Hernandez testified, if he testified against the gang, which he would do if he testified in favor of Mr. Ortiz, the rest of the facts would come out. He would be killed. He was afraid then, he was afraid at the post-conviction hearing. Cause was met. Shortly after the shooting, he not only made sure he laid low and hid from the police, he left the state and stayed there. Mr. Ortiz was in the back of the park, behind the field house, the field house on which, on the front steps, Mr. Hernandez stood. There was no way he could see Mr. Hernandez. With Mr. Hernandez laying low, there was no way he could discover whether or not Mr. Hernandez had seen the incident. And to go to one of the questions posed earlier, even if you could find Mr. Hernandez, getting him to testify when he was afraid of being killed was an obvious problem, too. The exercise of reasonable due diligence simply didn't allow Mr. Ortiz or his defense counsel to find Mr. Hernandez prior to the trial. The cause standard, that is, an objective, external reason, is present. As to prejudice, I think the appellate court's careful analysis shows a myriad of reasons why Mr. Hernandez's testimony would likely change the outcome of trial. The bad is the prejudice, an inability to assert a claim that establishes actual innocence. On the cumulative issue, this case is just like Molstad. This is a situation where, as in Molstad, there was an alibi witness. In this case, it was Arthur Dunlum. Arthur Dunlum, I'd like to spend a minute on. Arthur was in the back of the park, sitting on a bench, drinking a beer at the time of the murders. Mr. Dunlum is a Vietnam War veteran, honorably discharged from the armed forces, no criminal record, no gang association. Mr. Dunlum is a Vietnam War veteran, honorably discharged from the armed forces, no criminal record, no gang association, has held at the time of trial a steady job for eight straight years. And every day was his testimony. He would go to work at a local home furnishing store. He would work in the warehouse. And on his way home, he'd stop at a local liquor store, buy a six-pack of beer, and sit in the back of the park and drink the beer. He would then go home and repeat the next day. Mr. Dunlum testified that Sal Ortiz, that night, was sitting on the bench next to him, drinking a beer. The trial court, in an oral finding, said that he did not find Mr. Dunlum credible. That's it. There's no statement about why, no suggestion as to why the trial was not successful. On the state side of the ledger at trial, there were two witnesses, Christopher Estavia and Edwin Villarini. Both witnesses had given prior statements to the police that Mr. Ortiz had shot the victim at the end of a beating that took place in front and to the left of the field house in Gill Park. Both victims' prior statements said basically that it was a lie, that at the end of the beating, Mr. Ortiz stepped back, told everyone to step back, and as seen out of a western, pulled a gun and shot the victim. The victim then turned and stumbled up the street away from the park. That was the prior statements of both individuals. At trial, Edwin Villarini absolutely, unequivocally, and unambiguously said that it was all lies. He said that he had been brought to the station house after the police had come to his home, ransacked it, and found what they said were drugs at his home. The objective record in the case shows that they kept Mr. Villarini in the police station for 48 hours. Mr. Villarini said that he was chained to the wall of the interview room. He said that they told him they would take away his children if he did not tell the line and tell the state's story. Mr. Villarini did what many of us would probably do in that situation, and he told the state what they wanted to hear. He told the state that Mr. Ortiz, as they instructed him, had pulled the trigger at the end of that beating. He told the state in the grand jury testimony that that had happened as well. When he got to trial, right out of the blocks, he looked at the judge and the witness, and then he explained his position. The second witness, Christopher Ostavia, is more ambiguous, frankly. Mr. Ostavia purported to be sitting on a car across the street, across yet another row of cars, and then the beating. Mr. Ostavia's testimony was similar in his prior statement. It was that at the end of the beating, Mr. Ortiz stepped back, pulled a gun, shot the victim. The state then, frankly, without either establishing that he's misremembering or that he's contradicting his prior testimony, proceeds to impeach him with his prior statements. Prior statement being that Mr. Ortiz had stepped back from the beating, had shot him, and then the victim had gone down the street where two others had come and shot him down in the street. At trial, he did not testify, nor did Edwin Villarini, that in fact Mr. Ortiz was present or that he shot the victim. It was purely by the prior statements. Now, the trial judge in this case, Edwin Villarini, was one of the defendants who had the bench trial, Mr. Gomez, and he convicted Mr. Ortiz. In his oral findings, he found that he did not find Mr. Dunlap to be credible, as we discussed before, no basis for why he was not credible, but he found that the two recanting witnesses, their recantations were not credible, but rather their prior statements were, in his view, more truthful. That was the record upon which Salvador Ortiz was convicted. That's it. In that balance, we are not claiming that at trial, the judge shouldn't have ruled that he was convicted based on the evidence. To the contrary, what we're saying is that in light of the testimony of Mr. Hernandez, that he saw the whole thing from 25 feet away, not much farther than I am from you, and that it all involved people that he knew that in light of that testimony, one would have to reevaluate the relative credibility of the witnesses at the original trial, as the appellate court did in their decision. The appellate court quite capably walked through how it would affect each of the different pieces of evidence, and how the framework through which one would view the evidence at trial would change. And as a result of that framework, the appellate court likely changed the result on trial. Now, the trial judge, Judge Dernbach, at the post-conviction hearing, the issue you have to grapple with is whether he meant what he said, or whether he meant what the state would like him to have said. He did not make any credibility findings as to Mr. Hernandez. He said it was cumulative. The state would tell you that, well, he really meant credible, and that you should give deference to what he really meant, not what he really said. What I can tell you is that prior to granting the evidentiary hearing, Judge Dernbach denied the evidentiary hearing. This is a pro bono case, and I allowed one of the associates to argue the case at the hearing, but in essence, this was a case that it was just cumulative. Witnesses were coming up ad infinitum. Every two years, as you heard the state say, the family would somehow come up with more witnesses who were willing to swear under oath that Salvatore Ortiz was innocent, and he had to keep dealing with post-conviction petition after post-conviction petition. Judge Dernbach unequivocally stated, and I believe that was in January of 2005, I can give you the record site if you'd like it, Judge Dernbach unequivocally stated that this was cumulative, that it was just coming up over and over, and he didn't think that's what the law allowed. That was before he heard the testimony. He invited us to raise additional issues a month later, which we did. Judge Dernbach allowed the evidentiary hearing, and then a month later issued a very terse opinion, the gist of which relates to the evidentiary hearing is approximately one paragraph long, in which, true to his word, he said, it was cumulative, and I deny it. He did not mean credible. In his prior statements with regard to saying it was cumulative, when he said he was denying the evidentiary hearing, he said that he had to take the testimony of the witnesses at the original trial that he did not see, and he had to assume that they were credible, as the trial judge did, and that that was fixed, and he couldn't change that. And that's why any more testimony that Ortiz wasn't there would be cumulative. And that's what he did. That's what he meant, that's what he wrote, and that's what he did. And that is wrong, as the appellate court notes. He needs to reevaluate that evidence in light of the fact of the newly discovered evidence. And as the appellate court analyzed it, when you look at the evidence at trial through the prism of Mr. Hernandez's testimony, it changes the outcome. It shows that Salvador Ortiz has been in jail for almost 20 years now as an innocent man. We look forward to his new trial in getting him free. If there's no further questions, thank you. First, Your Honors, that is not what the post-conviction court did. The post-conviction court tells you exactly what it did in its order, and it tells you that it weighed the testimony of Sigfrido Hernandez against the original witnesses who testified at trial. And in looking at that original testimony, there are a few other pieces of testimony that were left out from the original trial that this Court may want to be aware of, and looking at the credibility of those witnesses that were presented by the people. Is there a finding in the record about that, credibility? At which, I'm sorry, at which point, Your Honor? Well, you're going to say that there's other places that you'd like to have us look at regarding credibility. Well, there is a clear credibility finding that's made not only by the original trial court, but also by the appellate court in reviewing defendant's conviction, where he claimed that he was not found guilty beyond a reasonable doubt, and on issues of credibility, the appellate court affirmed his conviction. But in terms of the other testimony that was offered at the original trial, it is correct that both of the people's witnesses recanted at trial. But it's also correct that the people offered testimony from another witness, a Chicago police officer, named Officer Marvin Bonstetter. And what that witness testified to were several discussions that he had with the people's witness about three occurrences prior to trial. The first occurrence was in the winter, immediately before the trial. The people's witness told this officer that he was driving down the street in his car when the windows of his car were shot out. The second incident that was testified to by Officer Bonstetter had to do with a visit that the witness's wife received at her place of work, where she was threatened if someone was to testify in this case. The third incident that Officer Bonstetter testified to was a visit which was received by our witness's niece at her school, where she was informed that if her uncle went to court and testified in this case, that there would be trouble. Certainly that testimony was considered by the trier of fact in determining whether the recantations that were given by the witnesses in this case were credible. And there's no indication that that testimony was also not factored into the decision made by the post-conviction court in this case. I can state that the post-conviction court did not weigh all of the testimony he explained to the parties prior to his delivering his decision in this case, the procedure that he followed, which was exactly that. He said, I have to look at everything. The original trial testimony, the testimony that was given here, and I have to weigh that and look at that before making my determination. So certainly in this case, the trial, the post-conviction court followed the proper procedure in reaching its decision, which was based on issues of credibility. Certainly a court can make a determination of credibility without coming out and saying, I find these witnesses more credible, or I find that this witness is not credible enough to change the outcome of the trial. And simply because he used the word cumulative in the context of a sentence where he's clearly talking about the outcome of the trial, and he's not talking about credibility issues, it doesn't mean that his decision should not be given deference on appeal. In terms of the cause and prejudice portion, counsel was stating that it's hard to imagine a case where a claim of actual innocence would not meet the cause and prejudice test, but certainly this is one of those. Defendant simply does not meet either the cause or the prejudice prong. It's difficult, if not impossible, to understand how when defendant brings forth six prior witnesses, all of whom say that they're in the park at the time of the shooting, several of whom, Mr. Dunlap Outstanding, are gang affiliated, that they're not aware of Mr. Hernandez, that they couldn't locate Mr. Hernandez. There's another witness in the record named Carmelita Hernandez, and it's unclear whether she's even a relation to Mr. Hernandez. So certainly it's difficult to believe that this witness could not be located. He was in town for at least a number of months before he went back to Wisconsin. And certainly because of the quality of his testimony, 12 years after the incident, where he misses a crucial middle part between the beating and the shooting by the Chacons, when the people's witnesses say that they did the shooting, that that would change the outcome of the trial. And certainly that sentiment is echoed by Justice Cahill in his dissent, where he notes that this witness, Sigfrido Hernandez, is engaged in a narcotics transaction at the time that the people's witnesses say the shooting took place. Even the justices themselves, in their opinion, couldn't agree on the significance of this testimony and whether it would have changed the outcome of the trial. So for the reasons presented here, Your Honors, and for those in the people's brief, we would ask this Court to find that the cause and prejudice test should be required of all petitioners proceeding on a successive post-conviction, and we would ask you to reverse the finding of the appellate court to reinstate the ruling of the trial court. Thank you. Thank you, Ms. Kelly. Thank you, Mr. Rose.